IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LENNOX AES HOLDINGS LLC<br>and<br>LENNOX AES INDUSTRIES LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>JASON BENTON,<br><br>    Defendant. | Civil Action No. 25-755-CFC |

## MEMORANDUM ORDER

Pending before me is a motion for a temporary restraining order filed by Plaintiffs Lennox AES Holdings LLC and Lennox AES Industries LLC (collectively, Lennox). D.I. 15.

I.

The parties' dispute arises out of an asset purchase agreement executed in September 2023. Lennox was on the buyer side of the agreement,[1] and Defendant Jason Benton (Benton) and two companies wholly owned by him, AES Industries,

---

[1] Lennox AES Industries LLC was not a party to the agreement, but in "December 2023, Lennox Holdings moved certain assets owned by it into Lennox [AES] Industries." D.I. 16 at 3 n.2.

Inc. and AES Mechanical Services Group, Inc. (together, the AES companies), were on the seller side. *See generally* D.I. 16-2.

As part of the agreement, Lennox acquired all "right, title, and interest," D.I. 16-2 at 15, in the AES companies' "business of HVAC accessory and rooftop curb manufacturing and installation, rooftop HVAC replacement and reclamation services," D.I. 16-2 at 2. Benton agreed to abide by several restrictive covenants in return. One such covenant was a non-compete provision. In relevant part, it barred Benton, for a period of five years, from "providing, distributing or selling within the Territory products or services substantially similar to those provided, distributed or sold by the Business, as conducted by the AES Companies prior to the Closing." D.I. 16-2 at 53. The non-compete provision contained a carveout central to the dispute at hand—it specifically provided that the agreement did not prevent Benton "from operating [his] Sunoptics skylight business as currently conducted as of the date hereof." D.I. 16-2 at 54.

Another restrictive covenant Benton agreed to abide by was a non-solicitation provision. That provision barred Benton from "solicit[ing] any customer of [the AES companies] who is or has been a customer on or prior to the Closing Date for the purpose of providing, distributing or selling products or services similar to those provided, distributed or sold by the Business, as conducted by the AES Companies prior to the Closing." D.I. 16-2 at 54.

2

After the deal closed, Benton worked at Lennox Holdings until December 2024, D.I. 16-1 ¶¶ 10–11, when he left to focus his attention and energy on SunOptics. Several months later, in April 2025, Benton met with Walmart to pitch a new skylight cap SunOptics was manufacturing, the "SLC 100% Opaque Aluminum Thermal Skylight." After the meeting, Walmart reached out to Lennox to inquire whether the parties' asset purchase agreement permitted SunOptics to manufacture and sell the skylight cap that Benton was pitching. *See* D.I. 16-3 at 2. The parties then exchanged letters, attempting to resolve whether Benton was barred under the terms of the agreement from manufacturing and selling skylight caps, including the "SLC 100% Opaque Aluminum Thermal Skylight." *See, e.g.*, D.I. 16-7.

Those attempts were unsuccessful. And on June 2, 2025, Lennox filed a Verified Complaint against Benton in the Delaware Court of Chancery, alleging that Benton had violated the non-compete and non-solicitation provisions by, among other things, causing SunOptics to pitch Walmart. *See generally* D.I. 1-1. Lennox sought by its Verified Complaint various forms of relief, including a preliminary injunction to enjoin Benton "from manufacturing aluminum skylight caps through SunOptics." D.I. 1-1 at 19. The same day it filed its Verified Complaint, Lennox filed with the Court of Chancery a motion to expedite proceedings and schedule a preliminary injunction hearing. D.I. 1-2 at 1.

3

Seventeen days later, on June 19, Benton removed the case to this Court. *See generally* D.I. 1.

On July 3, the parties jointly filed a proposed scheduling order for my signature "to govern expedited proceedings in connection with Plaintiffs' Motion for Preliminary Injunction." D.I. 9 at 2. The proposed order called for the parties to conclude their briefing on the preliminary injunction motion on November 10. D.I. 9. I signed the proposed order on July 8 and set a preliminary injunction hearing for November 19. D.I. 10.

Nine days after I signed the proposed order, on July 17, Lennox filed the instant motion, seeking an order that temporarily restrains Benton and his businesses from "marketing or selling any skylight caps (i.e., metal caps or covers capable of providing insulated leak protection for roof cavities that arise when a skylight is removed from a roof) to any third parties (including marketing or selling the specific skylight cap product marketed to Walmart)." D.I. 15. The same day Lennox filed this motion, I issued an order, notifying Benton that if he wished to respond to the motion, he had until no later than 5pm that same day to do so.[2] Benton filed a brief in opposition to the motion later that day. D.I. 18.

---

[2] In the agreement at issue, the parties consented to "*THE EXCLUSIVE JURISDICTION OF THE DELAWARE COURT OF CHANCERY* (AND ANY STATE APPELLATE COURT THEREFROM LOCATED IN THE STATE OF DELAWARE) OR FEDERAL COURT LOCATED IN NEW CASTLE COUNTY IN THE STATE OF DELAWARE AND IRREVOCABLY AGREE[D] THAT ALL

4

II.

A temporary restraining order is "an extraordinary and drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in the original) (quoting 11A Wright & Miller § 2948). To obtain a temporary restraining order, a movant must establish that (1) it is likely to succeed on the merits, (2) it will suffer irreparable harm without preliminary relief, (3) the balance of equities favors the movant, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Generally, the moving party must establish the first two factors and only if these gateway factors are established does the district court consider the remaining two

---

ACTIONS OR PROCEEDINGS RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT MAY BE LITIGATED IN SUCH COURTS." D.I. 16-2 at 67 (capitalization in the original; emphasis added). In accordance with this agreement, Lennox filed this action in the Delaware Court of Chancery—a court with an excellent and well-deserved reputation for handling non-compete and post-acquisition disputes and for doing so on an expedited basis. Because of its limited jurisdiction, the Court of Chancery can "consider and dispose of complex matters in an expedited fashion when the circumstances require it, without sacrificing quality and careful attention." Litigation in the Delaware Court of Chancery and the Delaware Supreme Court, Delaware.gov, https://corplaw.delaware.gov/delaware-court-chancery-supreme-court [https://perma.cc/G66W-BHYJ]. Benton slowed down this case significantly by removing it to federal court, and I can think of no good reason for him to have removed this case to this court. That's why I ordered Benton to respond so quickly to Lennox's motion for a temporary restraining order.

factors." *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020) (internal quotation omitted).

## III.

Lennox has not established the gateway factors of success on the merits and irreparable harm. I therefore need not, and do not, reach the remaining two factors.

To begin, Lennox has not made a clear showing that it is likely to succeed on the merits of its non-compete claim. It is not clear that the "business" Lennox purchased and excluded Benton from competing in encompasses skylight caps. The recitals section of the agreement defines the business Lennox purchased as the "business of HVAC accessory and rooftop curb manufacturing and installation, rooftop HVAC replacement and reclamation services." D.I. 16-2 at 2. It is not readily apparent that skylight caps fall within this definition.

But even if the "business" covered by the non-compete includes skylight caps, the carveout provision discussed above states that the non-compete agreement does not prevent Benton "from operating the Sunoptics skylight business as currently conducted as of the date hereof." D.I. 16-2 at 54. Benton represents in his brief, and I have no reason to doubt, that when the agreement closed, SunOptics sold skylight caps. D.I. 18 at 13.

Lennox says that the carveout language does not cover Benton's conduct because "Sunoptics did not begin marketing the 'Opaque Thermal Skylight' until

6

2025." D.I. 16 at 14. Benton counters that Lennox's "position is far too narrow a reading of the Non-Compete carve-out" because "Lennox did not bargain to limit the carve-out to only those specific SKUs and product models of SunOptics's skylight products that were in existence or sold at the time of the APA." D.I. 18 at 13. The parties have not presented me at this early stage in the proceedings with enough information to say definitively which reading of the carveout is correct. I find therefore that Lennox has not made a clear showing that Benton has violated or in the future will violate the non-compete by manufacturing and attempting to sell skylight caps, including the "SLC 100% Opaque Aluminum Thermal Skylight."

Next up is Lennox's non-solicitation claim. The agreement provides that "nothing in . . . Section 7.11 shall prevent or limit [Benton] or [his] Affiliates from operating the Sunoptics skylight business as currently conducted as of the date hereof." D.I. 16-2 at 54. The non-solicitation provision is located in a subsection of Section 7.11, subsection 7.11.2. D.I. 16-2 at 54. It follows that, just as Benton may be allowed to compete in the skylight cap business, he may be allowed to solicit in this business because SunOptics sold skylight caps when the agreement closed. Accordingly, Lennox has not made a clear showing that it is likely to succeed on the merits of its non-solicitation claim.

Lennox has also failed to make a clear showing that it is likely to suffer irreparable harm absent a temporary restraining order. At every turn, Lennox has delayed this case, and in doing so, has effectively conceded that it will not suffer irreparable harm without emergency relief. Go back to the beginning of this dispute. Lennox found out in April that Benton engaged in conduct that it now contends violated multiple restrictive covenants. *See* D.I. 16-3 at 2. Once it heard about Benton's actions, Lennox did not rush off to a court for relief but instead waited until June to sue in the Court of Chancery. *See generally* D.I. 1-1.

Once the case was removed to this court, Lennox did not push the pace as you would expect from a party truly seeking to avoid irreparable harm. Lennox stipulated to a briefing schedule for a preliminary injunction—even though, under that schedule, briefing would not be completed until November. *See generally* D.I. 9. Moreover, it stipulated to this schedule despite not having a deal in place that prevented Benton from manufacturing and selling skylight caps. Lennox's lack of urgency has continued since I adopted the parties' proposed briefing schedule for a preliminary injunction. It waited more than a week after I adopted the proposed schedule to file this motion. D.I. 15. And then, the very next day after it filed this motion, Lennox filed a motion to remand (D.I. 20), effectively conceding that it can wait for relief until this case is back in the Court of Chancery if, in fact, it is remanded.

Lennox points to a provision of the agreement that states that "irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms," D.I. 16-2 at 67, as proof that it will suffer irreparable harm without a temporary restraining order. D.I. 16 at 20. But, as discussed above, it is not clear that the agreement has been violated. And, even if it had been violated, "most federal courts do not consider a contractual stipulation dispositive for purposes of showing irreparable harm." *Cabela's LLC v. Highby*, 362 F. Supp. 3d 208, 224 (D. Del. 2019).

Lennox also says that "[i]f the Court allows Benton to continue soliciting Lennox AES customers with a competing product, more irreparable harm to Lennox's reputation and goodwill with its existing customers is inevitable." D.I. 16 at 21. Implicit in this assertion is Lennox's belief that Benton has violated and will in the future violate the restrictive covenants by manufacturing and selling skylight caps. But, as discussed above, it is not clear that Benton's manufacturing and selling of skylight caps violates the non-compete and non-solicitation provisions. And thus, Lennox has not shown clearly that it will suffer irreparable harm absent a temporary restraining order.

Because Lennox has not made a clear showing that it is likely to succeed on the merits and it will suffer irreparable harm absent emergency relief, I need not

reach whether the balance of equities favors Lennox and whether an injunction is in the public interest. *Greater Phila. Chamber of Com.*, 949 F.3d at 133.

\* \* \* \*

NOW THEREFORE, at Wilmington on this Twenty-second day of July in 2025, it is HEREBY ORDERED that Lennox's Motion for Temporary Restraining Order (D.I. 15) is DENIED.

_____
CHIEF JUDGE