IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LENNOX AES HOLDINGS LLC and LENNOX AES INDUSTRIES LLC, <br><br> Plaintiffs, <br><br> v. <br><br> JASON BENTON, <br><br> Defendant. | Civil Action No. 25-755-CFC |

## MEMORANDUM

On December 9, 2025, I issued an Order granting the motion for a preliminary injunction filed by Plaintiffs Lennox AES Holdings LLC and Lennox AES Industries LLC (collectively, Lennox). D.I. 83 at 1. I did not, however, enter an injunction because the parties had not addressed the issue of what bond Lennox should post to comply with Federal Rule of Civil Procedure 65(c). D.I. 82 at 28; D.I. 83 at 1; *see also* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."). Instead, I ordered the parties to meet and confer to see if they could agree to an appropriate bond. D.I. 83 at 1.

The parties were unable to reach an agreement and submitted letters proposing bond amounts more than three orders of magnitude apart. D.I. 86 at 1; D.I. 87 at 1. Defendant Jason Benton argues that an appropriate bond amount is no less than $30 million. D.I. 86 at 2. Lennox argues that a $5,000 bond is sufficient. D.I. 87 at 2.

I have discretion to determine the amount of the bond. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988). "The bond amount must be tied to the scope of the preliminary injunction and account for the factual circumstances of the case." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 390 (3d Cir. 2021).

Benton says that a $30 million bond is required based on an email from Allen Gunn. As Benton notes in his letter, in my December 9, 2025 Memorandum Opinion, I found Gunn to be credible, D.I. 82 at 3 n.2. In the email in question, Gunn responded to the question, "What would compel Jason [Benton] to do this [i.e., try to sell the Sunoptics Cap to Walmart]?" D.I. 66-7 at 2. His response was: "Jason knows that Walmart has over 1,000,000 aging skylights and if they only covered 10%, that would be $30,000,000 at $300 each." D.I. 66-7 at 2. In his letter, Benton calls this response "Gunn's estimation." And he states in his letter:

> During his deposition, Benton disputed Gunn's estimation. But the Court has determined to credit Gunn's testimony and declined to credit Benton's testimony.

2

> Memorandum Op. at 3 n.2, 19–20. Thus, in determining the amount of the bond, Gunn's estimation should control.

D.I. 86 at 2 n.1. But what Benton did not disclose in his letter is that "Gunn's estimation" *is based on what Benton told him.* Gunn testified in his deposition that in the email response he "was just making the point that, you know, Walmart has a huge amount of skylights, [that] they're all going to be replaced or covered [at some point], and that it's a potentially significant amount of business." D.I. 87-1 at 9. As for the 1,000,000 figure, according to Gunn: "Jason [Benton] and I – I had heard him say many times about they had over 1 million skylights on Walmart roofs[.]" D.I. 87-1 at 9. Since Benton, not Gunn, is the source of "Gunn's estimation," the "estimation" is suspect and does not "control."

Even if it were assumed that Walmart has 1,000,000 aging skylights, Benton has not put forth any evidence to suggest that Walmart currently desires to contractually commit itself before trial is held in this matter early next year to replacing all those skylights with curb covers. To the contrary, Walmart informed the parties that it will not buy the Sunoptics Cap or issue a specification for skylight opening covers until this matter is resolved. D.I. 68-8 at 61:4–22. And Walmart's procurement officer testified in his deposition that Walmart's issuance of a specification for a skylight opening cover would not mean that Walmart would exclusively purchase that cover. D.I. 68-8 at 46:10–14. Benton states that "the breadth of this Court's injunction creates a real possibility that the status quo may

3

change for the benefit of Lennox in that Walmart . . . may decide to move forward with Lennox's product in light of the to[-]be[-]issued injunction." D.I. 86 at 3. But he cites no evidence to support this assertion; and, based on Walmart's prior representations, it appears unlikely that Walmart would take any action that would upset the status quo before trial.

Lennox has offered to post a bond of $5,000. That amount exceeds Lennox's estimate of Benton's lost profits between now and a trial in the first half of 2026. D.I. 87 at 2–4. And in my view, that amount is tied to the scope of the preliminary injunction and accounts for the factual circumstances present here.[1]

---

[1] Lennox estimates Benton's lost profits would be $1,500 to $3,500 based on the following assumptions: (1) Benton's profit margin would be $100 per Sunoptics Cap, (2) Benton would sell five Sunoptics Caps per month, and (3) the preliminary injunction will be in effect for three to seven months. D.I. 87 at 3–4. These assumptions are reasonable. First, Benton testified in his deposition that the AES Companies profited "[m]aybe 20 percent" for each of the two direct sales of the AES Cap to Walmart between the years 2020 and 2024, D.I. 58-36 at 56:3–57:18, and Sunoptics has offered the Sunoptics Cap to Walmart for approximately $500, D.I. 58-9 at 14. Second, Sunoptics' Vice President of Operations and Business Development Grant Grable testified in his September 2025 deposition that Sunoptics had sold eleven Sunoptics Caps to Walmart, D.I. 58-38 at 11:7–9. These sales amount to under two Sunoptics Caps per month in the approximately eight months between Benton's initial outreach to Walmart about the Sunoptics Cap in January 2025 and Grable's deposition in September 2025, or under four Sunoptics Caps per month in the three months between Benton's outreach to Walmart in January 2025 and Walmart's outreach to Lennox in April 2025 when this dispute arose. Third, I indicated that "I am willing to try the case as early as February next year," D.I. 82 at 24, and Lennox represents that it "currently expects that this case can be tried in the first half of 2026," D.I. 87 at 4 n.1.

Accordingly, I will exercise my discretion and require Lennox to post a bond in that amount.

    The Court will issue an Order consistent with this Memorandum.

December 18, 2025　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　CHIEF JUDGE