IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LENNOX AES HOLDINGS LLC
and LENNOX AES INDUSTRIES
LLC,

                Plaintiffs,

      v.

JASON BENTON,

                Defendant.

Civil Action No. 25-755-CFC

---

## MEMORANDUM

Plaintiffs and Counterclaim Defendants Lennox AES Holdings LLC and Lennox AES Industries LLC (collectively, Lennox) have sued Defendant and Counterclaim Plaintiff Jason Benton for breach of contract. D.I. 1-1 ¶¶ 35–50; D.I. 111 ¶¶ 35–50. Benton has asserted eight counterclaims against Lennox. D.I. 119 ¶¶ 183–238.[1] Benton demands relief in the form of "incidental, compensatory, punitive, attorney's fees, and other damages" and "any and all such other and further relief as the Court may deem just and proper." D.I. 119 at 84.

Pending before me is Lennox's Motion to Dismiss Benton's Counterclaims Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the Motion). D.I. 121. Lennox

---

[1] Unless noted otherwise, paragraph number citations to Benton's Answer and Counterclaims (D.I. 119) refer to Benton's Counterclaims (D.I. 119 at 34–84).

seeks by its Motion, among other things, to dismiss Counterclaims II and III on the ground that Benton does not have standing to seek relief for injuries sustained by AES Mechanical Services Group, Inc. (AES Mechanical). D.I. 122 at 1, 5–7, 22; D.I. 132 at 2–5. I granted in part the Motion insofar as it seeks the dismissal of Counterclaims II and III and otherwise deferred resolution of the Motion. D.I. 135.

I write here to address why I dismissed Counterclaims II and III.

## I.

Lennox's Motion brings a facial challenge to standing because it does not challenge the validity of any factual allegations in Counterclaims II and III. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017) (finding a movant "brought only a facial challenge"—rather than a factual challenge—where the movant "did not challenge the validity of any of the . . . factual claims as part of its motion" and "argues that the allegations . . . , even accepted as true, are insufficient to establish . . . Article III standing"); *see also* D.I. 122 at 4 (Lennox citing the legal standard for facial challenges to standing from *In re Horizon*, 846 F.3d at 633).

## II.

The following facts are taken from the Counterclaims (D.I. 119 at 34–84) and three documents referenced therein: (1) the Asset Purchase Agreement (the APA) (D.I. 122-2), *see, e.g.*, D.I. 119 ¶¶ 1, 159–63; (2) the Transition Services

Agreement (the TSA) (D.I. 122-5), *see, e.g.*, D.I. 119 ¶¶ 2, 134–42; and (3) an amendment to the TSA (D.I. 122-6), *see, e.g.*, D.I. 119 ¶¶ 143–51. *See D'Antonio v. Borough of Allendale*, 2022 WL 10965674, at *2 (3d Cir. Oct. 19, 2022) ("In considering . . . a[] [facial] attack [to standing], the court must only consider the allegations of the [counterclaims] and documents referenced therein and attached thereto, in the light most favorable to the [counterclaim] plaintiff.") (internal quotation marks and citation omitted).[2] I accept as true the facts alleged in the Counterclaims and draw all reasonable inferences from them in favor of Benton for purposes of deciding Lennox's facial challenge to Benton's standing to pursue Counterclaims II and III. *See In re Horizon*, 846 F.3d at 633 ("[For] facial challenges to standing, we apply the same standard as . . . a motion to dismiss under Rule 12(b)(6). Consequently, we accept the [counterclaim] [p]laintiff['s] well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the [counterclaim] [p]laintiff['s] favor.") (citations omitted).

AES Mechanical is an Alabama corporation. D.I. 119 ¶ 7; D.I. 122-2 at 1; D.I. 122-5 at 1; D.I. 122-6 at 3. Benton alleges that AES Mechanical is wholly owned by Benton, D.I. 119 ¶¶ 7, 135, and that Benton is the sole shareholder of AES Mechanical, D.I. 119 ¶¶ 182, 189, 194.

---

[2] Benton does not dispute the authenticity of the three documents referenced in Benton's Counterclaims and attached to Lennox's Motion. *See generally* D.I. 128.

3

Benton alleges that in the summer of 2022, Lennox approached him about acquiring AES Mechanical. D.I. 119 ¶ 11. Negotiations over the next year led to an asset purchase agreement, i.e., the APA (D.I. 122-2). D.I. 119 ¶ 11.

The APA was signed on September 20, 2023. D.I. 119 ¶ 40; D.I. 122-2 at 1–2, 70. Benton and two of his companies—AES Industries, Inc. (AES Industries) and AES Mechanical—were on the seller side. D.I. 119 ¶ 161; D.I. 122-2 at 1–2. Lennox AES Holdings LLC and its parent Lennox International, Inc. were on the buyer side. D.I. 122-2 at 1–2.

The APA defines "Ancillary Agreements" to include "agreements . . . required to be delivered at or prior to the Closing [of the APA]," such as the TSA. D.I. 122-2 at 3, § 1.1; *see also* D.I. 122-2 at 59, § 8.3.1(j) (requiring AES Industries and AES Mechanical to execute the TSA as a closing condition); D.I. 122-2 at 59, § 8.3.2(g) (requiring Lennox AES Holdings LLC to execute the TSA as a closing condition). The APA closed on October 25, 2023 (the Closing, or the Closing Date). D.I. 119 ¶¶ 65, 93.

The TSA was signed on the APA's Closing Date on October 25, 2023, D.I. 122-5 at 1, and had a one-year term, D.I. 119 ¶ 142; D.I. 122-5 at 2, § 3(a). The parties to the TSA are AES Industries, AES Mechanical, and Lennox AES Holdings LLC. D.I. 119 ¶ 135; D.I. 122-5 at 1. Benton alleges that "[t]he stated purpose of the TSA was to structure how and to what extent AES Mechanical and

4

AES Industries were to provide services, defined as Transition Services, to Lennox . . . and to provide for the 'Facility Services' from Lennox . . . to [Benton's company AES] SunOptics[,] [Inc.]."  D.I. 119 ¶ 136; D.I. 122-5 at 1.

Exhibit A of the TSA provides a "Description of Transition Services," D.I. 119 ¶ 138; D.I. 122-5, Ex. A, and states in relevant part that "AES [Industries and AES Mechanical] shall obtain and maintain permits for any projects that have a start date as of the Closing [on October 25, 2023] or the 90 day period thereafter (the 'Permits')" during the one-year term of the TSA.  D.I. 119 ¶ 138; D.I. 122-5, Ex. A.  Benton alleges that "[i]n effect, the TSA required AES Mechanical to be liable on all Permits, as outlined above, despite Lennox . . . performing the work," D.I. 119 ¶ 139, and that "[t]he TSA and the parties specifically understood that Lennox . . . would act reasonably to transfer the Permits from AES Mechanical to . . . Lennox," D.I. 119 ¶ 140.

Benton alleges that in October 2024, Lennox International, Inc. contacted Benton about extending the one-year term of the TSA because "there were certain states [with active projects] in which Lennox had not secured a contracting license . . . where transferring the registration to Lennox . . . was still pending with the state government."  D.I. 119 ¶ 143.

Amendment No. 1 to the TSA was signed on October 23, 2024 by the same parties to the TSA: AES Industries, AES Mechanical, and Lennox AES Holdings

LLC. D.I. 122-6 at 3. Amendment No. 1 to the TSA, among other things, (1) extended the TSA for an additional year, D.I. 119 ¶¶ 143–44; D.I. 122-6 at 4, § 1.3 (amending Section 3(a) of the TSA to have a two-year term); and (2) replaced Exhibit A of the TSA with Exhibit A of Amendment No. 1 to the TSA to require AES Industries and AES Mechanical to continue maintaining permits in ten specified states, D.I. 119 ¶¶ 143–45; D.I. 122-6 at 4, § 1.4; D.I. 122-6, Ex. A. Exhibit A of Amendment No. 1 to the TSA reads in relevant part:

> For the following states, [the] AES [Companies] shall obtain and maintain all permits for any projects that have a start date as of the Effective Date of this Amendment of thereafter during the Term, until such date that [Lennox AES Holdings LLC] is able to pull permits in such states and no open permits remain in the name of [the] AES [Companies]: California, Delaware, Hawaii, Maryland, Mississippi, Nevada, New Jersey, New Mexico, New York and Tennessee (the "Permits").

D.I. 119 ¶ 146; D.I. 122-6, Ex. A.

Counterclaims II and III assert breach of contract and unjust enrichment claims based on Lennox's alleged use of AES Mechanical's name and contracting license credentials without notice, authorization, or consideration (1) after October 23, 2024 in states not mentioned in Exhibit A of Amendment No. 1 to the TSA (including Washington and Georgia); and (2) after the expiration of the amended TSA on October 23, 2025 in states "such as New Jersey." D.I. 119 ¶¶ 2, 134–59, 183–89. Benton alleges that "Lennox obtained millions of dollars of

6

benefits to which it was not entitled under the express terms of the TSA Agreement and that it would not have obtained had it complied with the TSA Agreement," D.I. 119 ¶ 2, and that "Lennox did not negotiate or pay consideration to Benton for the additional rights exercised by Lennox, but excluded from its authorization in the amended TSA," D.I. 119 ¶ 196.

III.

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is "an essential and unchanging part" of this case-or-controversy requirement. *Id.* at 560. "Only a party with standing can invoke the jurisdiction of the federal courts." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). When the court's subject-matter jurisdiction is challenged pursuant to Rule 12(b)(1), "[t]he party invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Lujan*, 504 U.S. at 561. To meet that burden, the counterclaim plaintiff must allege a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). The personal injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted); *see also*

7

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.") (internal quotation marks and citations omitted).

IV.

A.

I will first address whether Benton has met his burden to establish that he has standing to pursue Counterclaim II.

Benton alleges two facts to support the personal injury element of Article III standing for Counterclaim II: (1) "Lennox . . . trad[ed] on the AES Mechanical name," D.I. 119 ¶ 189; *see also* D.I. 119 ¶¶ 147–59, 188–89; and (2) "Benton[] [is] the sole shareholder of AES Mechanical," D.I. 119 ¶ 189; *see also* D.I. 119 ¶ 7. (I disregard the legal conclusion in Count II that "Lennox's breach of the amended TSA . . . caus[ed] injury to Benton" (D.I. 119 ¶ 189). *See In re Horizon*, 846 F.3d at 633 ("[T]hreadbare recitals of the elements of [standing], supported by mere conclusory statements, do not suffice. We disregard such legal conclusions.") (second alteration in original) (internal quotation marks and citations omitted).)

Lennox argues—and I agree—that Benton lacks standing to pursue the breach of contract claim asserted in Counterclaim II because Benton is not a party to the asserted contract (the TSA) nor a third-party beneficiary. D.I. 122 at 5–6;

8

D.I. 132 at 2–3.  Benton does not dispute that he is not a third-party beneficiary, *see generally* D.I. 128,[3] but insists that he is a party to the TSA, D.I. 128 at 6.

The "Parties" to the TSA (D.I. 122-5) and to Amendment No. 1 to the TSA (D.I. 122-6) are defined as AES Industries, AES Mechanical, and Lennox AES Holdings LLC.  D.I. 119 ¶ 135; D.I. 122-5 at 1; D.I. 122-6 at 3.  (Benton does not dispute that his signature on the TSA or on Amendment No. 1 to the TSA on behalf of the corporations AES Industries and AES Mechanical (D.I. 122-5 at 6; D.I. 122-6 at 5; D.I. 119 ¶ 144) does not make Benton a party to the TSA.  *See generally* D.I. 128 at 6–7; *see also* D.I. 122-5 at 5, § 14 ("The [TSA] shall be governed by and construed in accordance with the internal laws of the State of Delaware . . . ."); *BuzzFeed, Inc. v. Anderson*, 2022 WL 15627216, at \*10 (Del. Ch. Oct. 28, 2022) ("Generally, an agent of a disclosed principal does not become a party to the principal's contract, even if the agent negotiated and signed the contract on the principal's behalf.") (citation omitted).)

---

[3] Benton alleges (D.I. 119 ¶ 136)—and the TSA provides (D.I. 122-5 at 4, § 10)—that AES Sunoptics, Inc. is an intended third-party beneficiary of the TSA.  The TSA otherwise indicates that it "is for the sole benefit of [AES Industries, AES Mechanical, and Lennox AES Holdings LLC] and their respective successors and permitted assigns" and that "nothing herein, express or implied, is intended to or shall confer upon any other person [such as Benton] any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Agreement." *See* D.I. 122-5 at 4, § 10.

Benton nevertheless argues that he is a party to the TSA by virtue of the TSA being an Ancillary Agreement that is incorporated by reference and merged into the APA (D.I. 119 ¶¶ 134, 184)[4] and Benton being a party to the APA (D.I. 119 ¶¶ 1, 135, 178). D.I. 128 at 6. Lennox responds that (1) "the APA makes clear that the Ancillary Agreements are not incorporated—let alone 'merged'—[into the APA]," D.I. 132 at 2 (citing D.I. 122-2 at 68, § 11.7), and (2) "simply because the APA references the TSA does not somehow convert Benton from a non-party to a party to the TSA," D.I. 132 at 3 (citing *DuPont De Nemours, Inc. v. Hemlock Semiconductor Operations LLC*, 2024 WL 3161799, at *9 (Del. Super. Ct. June 10, 2024)).

Section 11.7 of the APA provides in relevant part that

> [t]his Agreement, the Schedules and Exhibits attached to this Agreement (each of which are incorporated into this Agreement) and the Ancillary Agreements set forth all of the promises, covenants, agreements, conditions and undertakings between the Parties with respect to the subject matter hereof and thereof, . . . .

D.I. 122-2 at 68, § 11.7; *see also* D.I. 122-2 at 14, § 1.3(f) (Section 1.3 of the APA, titled "Construction," providing that "[t]he Disclosure Schedules and Exhibits to

---

[4] I am not required to accept as true Benton's conclusory allegation that "the TSA Agreement . . . was integrated with the APA" (D.I. 119 ¶ 134) or that "[t]he TSA is an Ancillary Agreement incorporated by reference and merged into the APA" (D.I. 119 ¶ 183). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[C]ourts are not bound to accept as true a legal conclusion couched as a factual allegation") (internal quotation marks and citation omitted).

this Agreement are incorporated herein by reference and made a part hereof for all purposes"). Accordingly, while the Disclosure Schedules and Exhibits—including an unexecuted, draft TSA[5]—are incorporated into the APA, the Ancillary Agreements, including the TSA, are individual agreements that are not incorporated or merged into the APA and thus the APA does not make Benton a party to the TSA.

In sum, because Benton is neither a party to the TSA nor a third-party beneficiary of the TSA, Benton does not have standing to bring a breach of contract claim under the TSA or Amendment No. 1 to the TSA. In other words, the alleged injury to AES Mechanical is not particularized to Benton, and Benton does not have Article III standing to bring Counterclaim II on behalf of his company AES Mechanical. *See, e.g.*, *Meade v. Kiddie Acad. Domestic Franchising, LLC*, 501 F. App'x 106, 108 (3d Cir. 2012) ("It is well established that, absent a direct individual injury, the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation.") (citation

_____

[5] The APA indicates that some Ancillary Agreements in an unexecuted, draft form are Exhibits attached to the APA. *See, e.g.*, D.I. 122-2 at 3, § 1.1 (defining "Ancillary Agreements" to include "the Supply Agreement[] [and] the Transition Services Agreement"); D.I. 122-2 at 58, § 8.3.1(g) (indicating that an unexecuted, draft Supply Agreement is attached to the APA as Exhibit G); D.I. 122-2 at 59, § 8.3.1(j) (indicating an unexecuted, draft Transition Services Agreement is attached to the APA as Exhibit H).

omitted); *see also* D.I. 128 at 6 (Benton describing Counterclaim II as one of "Benton's AES[] [Mechanical] counterclaims").

B.

I will next address whether Benton has met his burden to establish that he has standing to pursue Counterclaim III.

Benton alleges the following facts to support the personal injury element of Article III standing for Counterclaim III: (1) "Lennox . . . trad[ed] on the AES Mechanical name," D.I. 119 ¶ 194, and engaged in "the unauthorized use of the AES Mechanical name and licensure," D.I. 119 ¶ 195; *see also* D.I. 119 ¶¶ 147–59, 194–95; and (2) "Benton[] [is] the sole shareholder of AES Mechanical," D.I. 119 ¶ 194; *see also* D.I. 119 ¶ 7. (Again, I disregard the legal conclusions in Counterclaim III that "Lennox's unauthorized use of the AES Mechanical name and licensure . . . caus[ed] injury to Benton" (D.I. 119 ¶ 194) and "Lennox was unjustly enriched . . . to the detriment of Benton" (D.I. 119 ¶ 195). *See In re Horizon*, 846 F.3d at 633.)

Lennox argues—and Benton does not dispute—that "Benton does not have standing to pursue [Counterclaim III] based solely on injury allegedly suffered by AES Mechanical." D.I. 122 at 7; *see generally* D.I. 128 at 7–8. Benton's only response is a conclusory argument that "this Court has jurisdiction over this claim" (that arguably only responds to Lennox's Rule 8(a)(1) argument that

12

Counterclaim III "is a permissive counterclaim for which Benton has not invoked the Court's subject-matter jurisdiction," D.I. 122 at 7). D.I. 128 at 8. Accordingly, Benton has not met his burden to establish his standing to pursue Counterclaim III. The alleged injury to AES Mechanical is not particularized to Benton, and Benton does not have Article III standing to bring Counterclaim III on behalf of his company AES Mechanical. *See, e.g., Meade*, 501 F. App'x at 108 ("It is well established that, absent a direct individual injury, the president and principal shareholder of a corporation lacks standing to sue for an injury to the corporation.") (citation omitted); *see also* D.I. 128 at 6 (Benton describing Counterclaim III as one of "Benton's AES[] [Mechanical] counterclaims").

April 2, 2026

_____
CHIEF JUDGE

13